**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION**

**RICO WALKER and ROBERT HILL,**

       Plaintiffs,

      v.

**THOMASVILLE FORD LINCOLN, INC.,
f/k/a THOMASVILLE FORD LINCOLN
MERCURY, INC.,**

       Defendant.

Civil Action No. 7:11-cv-83 (HL)

**ORDER**

Before the Court is Defendant Thomasville Ford Lincoln, Inc.'s ("Thomasville Ford") Motion for Summary Judgment. For the reasons stated below, the Motion is granted in part and denied in part.

I.   **FACTUAL BACKGROUND**

Plaintiff Rico Walker ("Walker") worked for Thomasville Ford from July 27, 2009 until his termination on July 26, 2010. (Defendant's Statement of Material Facts ("DSMF"), Doc. 20-1, ¶ 1.[1]) Plaintiff Robert Hill ("Hill") was employed by Thomasville Ford from January 4, 2010 until his termination on July 26, 2010. (DSMF ¶ 2.) Both men were hired by Thomasville Ford to work as lube technicians, performing duties including changing oil, rotating tires, performing

---

[1] All citations to the Defendant's Statement of Material Facts refer to those facts that have been admitted by Plaintiffs.

vehicle inspections, checking vehicle fluid levels, and testing batteries and engine lights. (DSMF ¶¶ 4, 5.)

Russell Griffin ("Griffin") was hired in November 2009 as the Service Director at Thomasville Ford, and in this capacity he was responsible for supervising the maintenance and repair departments. (DSMF ¶ 8.) Griffin was in charge of disciplining, hiring, and firing the employees in those departments. (DSMF ¶ 8.) During Griffin's tenure as Service Director, there were approximately seventeen employees in the maintenance and repair departments. (Deposition of Russell Griffin, Doc. 23, p. 47). At any one time, three of those employees were African-American and the rest were white.[2] (Griffin 48.) While he was employed as the Service Director, Griffin hired several new employees, including a nineteen-year-old white male, Ryan Anderson ("Anderson"). (Walker Affidavit ¶ 8.) One of Plaintiffs' allegations in this case is that Griffin treated Anderson more favorably than Plaintiffs.

Griffin served as Plaintiffs' direct supervisor from the time that he was hired at Thomasville Ford until July 26, 2010, when he made the decision to terminate Plaintiffs. (Griffin 29.) Both Plaintiffs were terminated on the same day; however, they were not present for each other's termination. (DSMF ¶ 10.) Plaintiff Walker's Separation Notice, which was completed by Griffin, indicated that he

---

[2] Griffin stated in his deposition that he had a total of five black employees: the Plaintiffs, Thomas Jones, Terrance Woods, and Derrick Wade. (Griffin 48.) These five men were never employed at the same time, but at least three of them were employed by Thomasville Ford at any point in time.

was fired for "poor job performance." (Walker Separation Notice, Doc. 34-1, p. 2.) Plaintiff Hill's Separation Notice, which was also completed by Griffin, noted that he was fired for "excessive absences." (Hill Separation Notice, Doc. 34-2, p. 2.) Following their termination, Plaintiffs filed this suit under Title VII, asserting claims for discrimination and retaliation against Thomasville Ford. Both of these claims are examined below.

II.     **SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show there is no genuine issue as to any material fact and … the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see* Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986). A genuine issue of material fact arises only when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505 (1986).

When considering a motion for summary judgment, the court must evaluate all of the evidence, together with any logical inferences, in the light most favorable to the nonmoving party. Id. at 354-55. The court may not, however, make credibility determinations or weigh the evidence. Id. at 255; *see also* Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150, 120 S.Ct. 2097 (2000).

The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of a material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548 (1986) (internal quotation marks omitted). If the moving party meets this burden, the burden shifts to the nonmoving party to go beyond the pleadings and present specific evidence showing that there is a genuine issue of material fact, or that the nonmoving party is not entitled to judgment as a matter of law. Id. at 324-26. This evidence must consist of more than mere conclusory allegations. See Avirgan v. Hull, 932 F.2d 1572, 1577 (11th Cir. 1991). Under this framework, summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

III.   **ANALYSIS**

A.   **Title VII Claim based on Discrimination**

Title VII provides that an employer may not "discharge any individual … with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, [or] sex." 42 U.S.C. § 2000e-2(a)(1). A plaintiff may establish a prima facie case for discrimination under Title VII in one of two ways. First, he may present evidence of discrimination through direct

4

evidence. Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1086 (11th Cir. 2004). A claim based on direct evidence requires "the most blatant remarks, whose intent could mean nothing other than to discriminate." Id. (citing Rojas v. Florida, 28 F.3d 1339, 1342 n. 2 (11th Cir. 2002)). "Direct evidence of discrimination would be evidence which, if believed, would prove the existence of a fact without inference or presumption." Carter v. City of Miami, 870 F.2d 578, 581 (11th Cir. 1989). The Court must address whether a plaintiff's claim of direct evidence of discrimination has merit. "When direct evidence of discrimination has been introduced, the lower court must, as an initial matter, specifically state whether or not it believes plaintiff's proffered direct evidence of discrimination." EEOC v. Alton Packaging Co., 901 F.2d 920, 924 (11th Cir. 1990). Second, where there is no direct evidence of discrimination, a plaintiff may show discrimination through circumstantial evidence. See Wilson, 376 F.3d at 1086.  Any evidence that merely suggests discrimination, but does not conclusively establish it, is considered circumstantial evidence. Id.

In this case, Plaintiffs allege that there is direct evidence of discrimination. Specifically, Plaintiffs claim that Walker asked Griffin if he was prejudiced, and Griffin responded "I don't like dealing with y'all kind." (Walker Affidavit, Doc. 34-3, ¶ 18.) The Court finds that this does not qualify as direct evidence of discrimination for two reasons. First, direct evidence requires that the evidence prove discrimination "without inference or presumption." Carter, 870 F.2d at 581. The statement cited by Plaintiffs as direct evidence requires some inference to

interpret it as a discriminatory remark. "Y'all kind" does not necessarily indicate a race-specific comment. Griffin did not specifically refer to African-Americans, and he could have been referring to another group of individuals. Second, the Court cannot give this statement the same weight as if it was admitted by Griffin. The statement is unrefuted, but it is not admitted. Only Walker's affidavit mentions this statement by Griffin, and the Court must consider that Walker is an interested party. Thus, the Court cannot consider this as direct evidence.

Without any direct evidence of discrimination, the Court must employ the three-step burden-shifting framework found in McDonnell-Douglas Corp. v. Green, 411 U.S. 792, 802-04, 93 S. Ct. 1817, 1824-25, 36 L.Ed. 2d 668 (1973). Under this framework, the plaintiff must first make out a prima facie case of discrimination. Chapman v. AI Transp., 229 F.3d 1012, 1024 (11th Cir. 2000) (en banc). Then the burden shifts to the defendant employer to articulate a legitimate, nondiscriminatory reason for the employment action. Id. If the employer is able to articulate a reason for the employment decision, the burden shifts back to the plaintiff to demonstrate that the employer's asserted reason is not the real reason for the employment decision and instead mere pretext. Id. at 1024-25. These steps are examined in greater detail below.

1. **Prima Facie Case of Discrimination**

To establish a prima facie case of Title VII discrimination, a plaintiff must show that (1) he belongs to a protected class; (2) he was qualified for the job; (3) he was subjected to an adverse employment action; and (4) he was replaced by

6

a person outside the protected class or suffered from disparate treatment because of membership in the protected class. <u>Kelliher v. Veneman</u>, 313 F.3d 1270, 1275 (11th Cir. 2002).[3] As Plaintiffs' factual circumstances are similar, but not exactly the same, they are analyzed separately below.

### a. **Prima Facie Case - Rico Walker**

### i. **Elements One and Two**

In this case, Walker can easily establish the first element of the prima facie case. There is no dispute that he is African-American, and therefore falls into a protected class. The second element, qualification, is also established by virtue of not being disputed by either party. Walker was hired by Thomasville Ford and the Court assumes that he was qualified for his job when he was hired. There is no indication in the record that he became unqualified at any point, and thus, the Court will assume that he remained qualified to perform his job duties until his

---

[3] The prima facie case used here is typically found in cases brought under Title VII and the Age Discrimination in Employment Act ("ADEA"). *See* <u>Apodaca v. Sec. of Dept. of Homeland Security</u>, 161 Fed. Appx. 897, 900 (11th Cir. 2006); <u>Kelliher v. Veneman</u>, 313 F.3d 1270, 1275 (11th Cir. 2002). Despite the fact that the ADEA is not implicated in this case, both parties appear to have framed their arguments using this particular articulation of the prima facie case. For clarity, the Court has chosen to employ the same framework used by the parties. The analysis and outcome in this case does not change based on the particular formulation of the prima facie case. For the record, the traditional prima facie case for a race discrimination case under Title VII requires that a plaintiff demonstrate "(1) that she is a member of a protected class; (2) she was subjected to an adverse employment action; (3) her employer treated similarly situated [white] employees more favorably; and (4) she was qualified for the job." <u>McCann v. Tillman</u>, 526 F.3d 1370, 1373 (11th Cir. 2008).

termination. Further, Defendants did not challenge this element of the prima facie case, and thus, the Court finds that it is conceded and established.

    ii.    **Element Three**

The third element of the prima facie case, adverse action, can only be established on some of Walker's claims. "To prove an adverse employment action … an employee must show a serious and material change in the terms, conditions, or privileges of employment. Moreover, the employee's subjective view of the significance and adversity of the employer's action is not controlling; the employment action must be materially adverse as viewed by a reasonable person in the circumstances." Davis v. Town of Lake Park, Fla., 245 F.3d 1232, 1239 (11th Cir. 2001) (emphasis omitted). Not all conduct by an employer that negatively affects an employee should be deemed an adverse employment action. Id. at 1238. The action must be more than "some de minimis inconvenience or alteration of responsibilities." Doe v. Dekalb County Sch. Dist., 145 F.3d 1441, 1452 (11th Cir. 1998). Additionally, while an adverse employment action need not result in a decrease in pay, "the asserted impact cannot be speculative and must at least have a tangible adverse effect on the plaintiff's employment." Davis at 1239.

In this case, Walker does not clearly assert what actions he claims are adverse. Thus, based on the Complaint and the evidence that has been put forth by the parties, the Court will analyze all of those actions that could possibly be

interpreted as adverse to determine which meet the third prong of the prima facie case and qualify as adverse actions.

First, Walker makes a general claim that he was treated differently than the white employees at Thomasville Ford. Walker alleges that Griffin spoke to the white employees to tell them good morning, but ignored him and did not speak to him. (Walker Affidavit, Doc. 34-3, ¶ 6.) Walker also claims that Griffin would "holler across the room for Hill and me to come to him, as if we were dogs or children." Id. Walker claims that he verbally objected to this treatment, and Griffin told him that if he did not like it, he could leave. Id. These actions, while potentially hurtful, are not sufficient to constitute an adverse action. "Title VII is neither a general civility code nor a statute making actionable the ordinary tribulations of the workplace." Gupta v. Fla. Bd. of Regents, 212 F.3d 571, 587 (11th Cir. 2000). Under Title VII case law, these actions do not amount to a "serious and material change in the terms, conditions, or privileges of employment." Davis, 245 F.3d at 1239. Thus, Walker's general allegations about Griffin's behavior are not sufficient to show an adverse action.

Next, Walker claims that Ryan Anderson, a white employee, was given better job assignments by Griffin. Walker claims that he would be working on the lube rack, and Anderson would be sweeping floors and taking out trash, which were, in Walker's opinion, better jobs "because [they were] easy." (Walker 84). Walker also claims that Anderson was allowed to spray truck bed liners, a

9

position that paid an additional dollar per hour, and was allowed to transport customers while he was not permitted to perform either task.

These job assignments do not constitute adverse actions. Assigning Anderson the tasks of sweeping, cleaning, and transporting customers is not an adverse action because there are no negative effects on Walker. The Eleventh Circuit requires that an act must "at least have a tangible adverse effect on the plaintiff's employment" to be considered adverse. Weston-Brown v. Bank of America Corp., 167 Fed. Appx. 76, 79-80 (11th Cir. 2006). In this case, there is no tangible negative effect on Walker because he was assigned duties on the lube rack as opposed to duties like sweeping or cleaning. As to Walker's claim that Anderson was taught to spray bed liners, a job with additional pay, Walker has not shown that he suffered any adverse action. Anderson was hired after Walker and was trained to do this job. These facts would be better suited in a failure to promote claim. As a claim for discrimination, Walker is simply unable to show that he suffered some adverse impact when Anderson was hired and trained to perform a higher paying job. Thus, the job assignments given to Walker do not constitute adverse actions.

Third, Walker alleges that he suffered an adverse employment action with regard to the consequences imposed on him after he engaged in a physical altercation with Anderson. In this altercation, Anderson, who was known to play with his pocket knife during working hours, approached Walker with the knife. (Walker Affidavit, Doc. 34-3, ¶ 11.) After having verbally warned Anderson

10

numerous times in the past not to play with the knife, Walker lost his temper when he saw Anderson approaching him and pushed Anderson into a car. The car suffered $200.00 in damage. Id. Griffin ordered that each man pay half of the $200.00 repair bill, with $100.00 taken from each man's paycheck over a period of four weeks. (Griffin 32; *see also* Doc. 34-8.) However, Walker claims that the money was only taken from his paycheck and no money was deducted from Anderson's paycheck. (Walker Affidavit, Doc. 34-3, ¶ 12.) This does constitute an adverse action because there is a tangible effect on Walker. If Walker was singled out to pay the entire $200.00, then he can show he was adversely impacted because of Griffin's action.

Fourth, Walker alleges that he was repeatedly sent home early when business was slow, but that Anderson was allowed to stay later and work additional hours. (Walker Affidavit, Doc. 34-3, ¶ 13.) This constitutes an adverse action. Walker and Anderson were both paid on an hourly basis, and Walker being told to leave earlier than Anderson is an adverse action because it directly affects Walker's total payment. This is a tangible consequence that constitutes an adverse employment action.

Finally, Walker claims that he was terminated, which constitutes an adverse action. It is widely accepted that termination is an adverse employment action that constitutes proper grounds for a Title VII discrimination claim.

In sum, Walker is unable to show that he suffered any adverse action based on the general work atmosphere at Thomasville Ford or the job

assignments he received. However, he is able to show that he suffered an adverse employment action based on his treatment after the knife altercation with Anderson, his working fewer hours while Anderson worked more, and his termination. With the first three elements of the prima facie case established as to some, but not all, of Walker's claims, the Court now turns to the fourth element.

iv.    **Element Four**

The most contested element of the prima facie case is the fourth element – whether Walker was replaced by a person outside of his protected class or whether he suffered from disparate treatment because of membership in his protected class. Walker contends that he is able to demonstrate that he was replaced by a non-minority and that he suffered from disparate treatment during his term of employment.

As for being replaced by a non-minority, Walker claims that he was fired and replaced by Anderson, a white male with less experience. (Doc. 36, p. 3.) Walker alleges that Anderson was "seriously under-qualified for the lube tech position when hired although he was favored in many aspects of his employment under Griffin." Id. Walker also claims that Brian Ferguson, another white male, was hired the day that Walker was fired and Ferguson was given the same job responsibilities that Walker had performed. Id.

What Walker fails to recognize is that Terrance Woods, a black male, was also hired the day that he and Hill were fired. Walker states that "Plaintiffs were

12

not replaced by a black employee, Terrance Woods" (Doc. 36, p. 3). However, Walker's statement is unsubstantiated, and the record shows that Woods was actually a replacement. In Griffin's deposition, he states that he knew he planned to fire Plaintiffs, and he hired Woods and Ferguson as replacements the morning of the Plaintiffs' termination. (Griffin 41.) He goes on to say that he hired Woods and Ferguson to do the exact same job that Plaintiffs did. (Griffin 42-43.) Griffin described Plaintiffs' job as "[d]ouble-teaming a car," meaning that two men would work on one car to change the oil, rotate the tires, check the air filter, wiper blades, and fuel levels, a more time-efficient way to service the car than having one person do all the work. (Griffin 43-44.) Jake McDowell, the Service Manager at Thomasville Ford at the time, said that Woods was "earning his wings" on the lube rack and noted that he often performed oil changes. (Deposition of Jake McDowell, Doc. 27, p. 25-26.)

Woods describes his job responsibilities as that of a "technician." In addition to helping with the oil changes, Woods stated that he was working "diagnosing cars, repairing them, doing inspections, taking online tests." (Deposition of Terrance Woods, Doc. 28, p. 11.) Woods stated that he was not a replacement for Plaintiffs because he was a higher level employee and performed more advanced duties. (Woods 15-16.)

Based on the record, the Court finds that Woods does constitute a replacement for Walker. Woods was hired on the same day that Walker was fired, which indicates that Griffin considered him a type of replacement. Even if

13

Woods differentiated his work from the duties assigned to Walker, it appears that other employees considered him performing the same job. He also admits that his job included helping the lube techs when he was available. Based on this evidence, the Court finds that Woods and Ferguson divided the job responsibilities left open when Walker and Hill were fired, and Woods does constitute a replacement.

Even if a plaintiff cannot show that he was replaced by someone in a non-protected class, the plaintiff has the option of demonstrating that he suffered disparate treatment to prove the fourth element of the prima facie case under Title VII. To prove this element, a plaintiff must show that his employer treated similarly-situated employees outside his classification more favorably than himself. Coutu v. Martin Cty. Bd. of Cty. Commissioners, 47 F.3d 1068, 1073 (11th Cir. 1995). To make this comparison, a plaintiff must show an employee who is similarly situated to them in all relevant aspects. Holifield, 115 F.3d at 1562. A comparator need not have the same job title as the plaintiff, however "material differences" in "ranks and responsibilities" may render comparison impossible. Land v. McKeithen, 423 Fed. Appx. 903, 906 (11th Cir. 2011). Instead of comparing job titles, the Eleventh Circuit has noted that the appropriate inquiry is whether the employer subjected the two employees to different employment policies. Lathem v. Dep't of Children & Youth Servs., 172 F.3d 786, 793 (11th Cir. 1999).

In determining whether employees are similarly situated for purposes of establishing a prima facie case, "it is necessary to consider whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways." Id. Additionally, to properly evaluate comparator evidence, "the quantity and quality of the comparator's misconduct [must] be nearly identical to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges." Maniccia v. Brown, 171 F.3d 1364, 1368 (11th Cir. 1999).

The Court must examine the three adverse actions suffered by Walker to determine if he was treated differently from any other non-minority employee at Thomasville Ford.

First, as to Walker's allegation that he suffered disparate treatment based on the knife altercation, the Court finds that there is evidence that Walker was treated differently than a similarly-situated employee. Walker's alleges that he paid the full $200.00 amount to repair the car and Anderson did not have to pay any part of the bill. Walker testified in his deposition that the full $200.00 amount for the repair to the car was taken out from his check - $100.00 one week and $100.00 the next. (Walker 194.) Walker testified that he did not ask Anderson whether the money was taken from his check, but he assumed it was not. (Walker 194.) In contrast, Griffin testified that the incident was "equally [Walker's and Anderson's] fault" and "[b]oth were written up, both of them were put on file,

both of them had money taken out of their check to pay for the damage they did to the customer's vehicle." (Griffin 32).

The only evidence, aside from Griffin and Walker's testimony about what money was taken from which employee, is Plaintiffs' Exhibit 10, a bill reflecting the $200.00 cost to repair to the car. On the bill is a handwritten note, signed by Griffin, that reads: "Rico [Walker], Ryan [Anderson], Take 25.00 per week for 4 weeks out of there [sic] paycheck." (Doc. 34-8.) However, there are no bank statements on the record to demonstrate to the Court which employee actually paid the $200.00 repair bill. Thus, it is conceivable that, despite Griffin's note on the repair bill, Walker was made to pay the full $200.00. Viewing the evidence in the light most favorable to the Plaintiff, it is unclear whether the entire amount was taken from Walker or whether the monies were divided equally between Walker and Anderson. If the money came entirely from Walker's account, this would constitute disparate treatment because both employees were similarly situated and both were involved in the same misconduct. Thus, the claim that Walker had to pay the full $200.00 for damage to the car does constitute a proper claim that meets the prima facie case for discrimination.

Second, as to Walker's allegation that Anderson was allowed to stay later at work when Walker was sent home, the Court finds that Anderson is not a valid comparator to Walker and the two cannot be evaluated based on their hours worked. The record reflects that Walker was a lube technician who was responsible for changing oil, rotating tires, performing vehicle inspections,

16

checking fluid levels, and testing batteries and engine lights. (DSMF ¶ 5.)
Anderson, on the other hand, assisted on the lube rack, but his primary job
responsibilities were different than those of Walker. Alan Fountain, who worked
at Thomasville Ford at the same time as Walker and Anderson, differentiated
Anderson's job responsibilities from those of Hill and Walker. He stated during
his deposition that Anderson was responsible for spraying bed liners, cleaning
the bathrooms, sweeping, chipping paint off the floor when needed, giving
customers rides, and performing other odd jobs. (Deposition of Alan Fountain,
Doc. 29, p. 20-21.) Chuck Hartsfield, a former dispatcher at Thomasville Ford,
stated that Anderson's job responsibilities included spraying bed liners, assisting
in parts delivery, and acting as a kind of custodian. (Deposition of Chuck
Hartsfield, Doc. 30, p. 32.) Hartsfield stated that he would "[c]lean the shop, clean
bathrooms, he actually helped out in the detail shop when needed." Id. Hartsfield
also testified that Anderson "[s]erved sort of like a porter, helped, you know,
deliver customers home, that kind of stuff." Id. Terrence Woods, who worked as a
technician, also stated that Anderson's jobs were different than a lube technician.
He noted that Anderson sprayed bed liners and did other cleanup work.
(Deposition of Terrence Woods, Doc. 28, p. 19-20.) Woods stated that
Anderson's main responsibility was spraying bed liners, and the remainder of his
time was spent helping on the lube rack and cleaning up. (Woods 22-23.)

Anderson's job responsibilities and the job responsibilities of Walker were
not substantially similar. While they both did some work on the lube rack,

Anderson also was charged with additional jobs, and thus, comparing the time that they stayed at the workplace is not a proper evaluation for purposes of establishing a prima facie case. Walker cannot show disparate treatment by comparing his working hours with those of Anderson.

Finally, as to Walker's claim that he was treated differently based on his termination, the Court finds that Walker cannot show a similarly situated employee who was treated differently. The Court is charged with evaluating the employer's action to determine if the employer subjected employees to different policies. In this case, Walker has been unable to show any other employee who had his same employment record and was not terminated.

Griffin testified that Walker was written up for "talking back, not wanting to do the job, going to lunch and taking an hour for lunch and not clocking in and out, coming in early and clocking in and then going to the store and hanging out, and talking on the phone, spending 70 percent of his time on the phone while he was supposed to be working,[4] fighting, damaging customers' vehicles." (Griffin p. 29-30.) In his attempt to show disparate treatment, Walker has pointed to other non-minority employees who exhibited some of these behaviors, but he has been unable to show another employee who exhibited all of these behaviors. For

---

[4] Walker challenges Griffin's estimation that he spent 70% of his time on his cell phone. There is evidence supporting Walker's challenge. *See* Deposition of Alan Fountain, Doc. 29, p. 6 (stating that Walker did not use his cell phone more than any other employee); Deposition of Brian Shoup, Doc. 33, p. 26 (testifying that Walker did not spend 70% of his time on his phone). However, the Court finds it is unnecessary to resolve this issue because the exact percentage of time that Walker spent on the phone is irrelevant.

example, Walker argues that Anderson was reprimanded by Griffin for fighting and damaging customers' vehicles. (Griffin 32.) However, there is no evidence that Anderson was ever disciplined for improperly clocking in and out. Similarly, Walker has shown that several other technicians often used their cell phones. (Fountain 6; Hartsfield 22; Deposition of Thomas Jones, Doc. 32, p. 32.) However, there is no evidence that those workers also had trouble with talking back or not wanting to do their jobs. Thus, Walker is unable to demonstrate a similarly-situated non-minority employee who was not fired for exhibiting the same behavior as Walker.

Walker has not shown any other employee who exhibited the same type of behavior in the workplace, and to try to compare Griffin's decision as to Walker with his decision about any other employee would be comparing "apples to oranges." Maniccia, 171 F.3d at 1368. Walker has failed to produce sufficient affirmative evidence to establish that Anderson or any other non-minority employee with whom he compares his treatment demonstrated conduct that was of comparable seriousness to the conduct for which he was discharged.

Without any evidence of a similarly situated employee who received preferential treatment, Walker cannot meet the fourth prong of the prima facie case as to his claim that he was discharged because of discrimination. Thus, only Walker's claim that he had to pay the full $200.00 amount for repairing damage to the car after his altercation with Anderson meets the prima facie case.

19

b. **Robert Hill**

Plaintiff Robert Hill must also establish a prima facie case for discrimination against Thomasville Ford.

    i.    **Elements One and Two**

Like his co-Plaintiff, Walker, Hill can easily establish the first and second elements of the prima facie case. It is undisputed that he was African-American and falls into a protected class. Further, it is assumed that Hill was qualified for his position because Defendants did not rebut this element, and therefore, it has been conceded.

    ii.    **Element Three**

Element three, whether Hill suffered an adverse employment action, requires more analysis than the first two elements. Like Walker, Hill does not specifically assert the actions that he claims are adverse. Thus, the Court will analyze all of those actions which could be construed as adverse to determine if they meet the prima facie case. First, Hill claims generally that that he was treated differently than the white employees at Thomasville Ford. Hill makes the same allegations as Walker. Specifically, Hill claims that Griffin spoke to white employees but declined to speak to him, and Griffin would yell for him from across the room and did not treat him with respect. Id. Like Walker's claim, these general allegations are not sufficient to constitute an adverse action. These allegations do not amount to a "serious and material change in the terms,

conditions, or privileges of employment." <u>Davis</u>, 245 F.3d at 1239. Thus, they cannot be considered an adverse action.

Next, Hill claims that Anderson was given better job assignments by Griffin. Hill's claims mirror those of Walker. Hill claims that he was assigned jobs by Griffin that were "the lowest, dirtiest jobs" while Anderson was given the preferred job assignments. (Hill Affidavit, Doc. 34-4, ¶ 7.) However, despite Hill's disdain for the jobs he was assigned, these job assignments do not constitute an adverse action because there are no tangible effects on Walker based on the alleged unfavorable assignments. The Eleventh Circuit requires that an act must "at least have a tangible adverse effect on the plaintiff's employment" to be considered adverse. <u>Weston-Brown</u>, 167 Fed. Appx. at 79-80. In this case, there is no tangible effect on Hill based on his assigned duties.[5]

Third, Hill claims that he suffered an adverse employment action because Anderson received more hours than he did. Hill claims that Anderson was allowed to stay late on slow days and he was sent home early. (Hill Affidavit, Doc. 34-4, ¶ 10.) This does constitute an adverse action because it affected his weekly wage, recognized as a tangible effect than supports a finding that there has been an adverse action.

---

[5] Like Walker, Hill's assertion that Anderson was hired to perform a higher paying job is best assessed under a failure to promote framework. Hill did not suffer any adverse action because Anderson was hired to perform a different job. Hill was not demoted nor was he denied the opportunity to spray bed liners. Anderson was hired after Hill and was trained to do a different job. That does not constitute an adverse action.

Finally, Hill claims that he was fired from his job. Termination is consistently recognized as an adverse employment action. Thus, Hill has shown that he suffered adverse actions when he was sent home before other non-minority employees and when he was terminated from his job.

### iii.   Element Four

To prove the fourth element of the prima facie case, a plaintiff must show either that he was replaced by a non-minority employee or that he suffered disparate treatment. Much like Walker, Hill cannot show that he was replaced by a non-minority employee. The analysis of Hill's claim about being replaced by a non-minority employee mirrors the discussion above about Terrance Woods. In the context of Walker's claim, the Court determined that Woods was a replacement for Walker, despite the fact that the two men did not perform exactly the same job function. Likewise, the Court now determines that Woods is also a replacement for Hill. Woods was hired on the same day that Walker and Hill were fired, and Woods performed many of the same job duties on the lube rack. Thus, Woods does constitute a replacement.

Since Hill cannot show that he was replaced by a non-minority, he must show disparate treatment to prove the fourth element of the prima facie case. As outlined above, to prove disparate treatment, a plaintiff must show that his employer treated similarly situated employees outside his classification more favorably than himself. Coutu, 47 F.3d at 1073. This comparison must be made

with an employee who is similarly situated to the plaintiff in all relevant aspects. Holifield, 115 F.3d at 1562.

The Court must examine the two adverse actions suffered by Hill to determine if Thomasville Ford treated Hill differently from any other non-minority employee in relation to these two acts.

First, as to Hill's allegation that Anderson was allowed to work more hours, the Court finds that this cannot be considered disparate treatment because there is no appropriate way to compare the duties assigned to Anderson and Hill. As analyzed above, Anderson's job responsibilities are significantly different than those of Hill. Hill, like Walker, was a lube technician with specific job responsibilities associated with working on the lube rack. Anderson, on the other hand, had broader job responsibilities and was not working solely on the lube rack. Thus, a comparison between Hill and Anderson on the basis of job assignments is improper since their job descriptions are dissimilar. Anderson is not a proper comparator and, thus, Hill cannot show disparate treatment by comparing the hours he was allowed to work with the hours that Anderson was allowed to work.

Next, Hill alleges that he suffered disparate treatment when he was terminated for excessive absences. In his affidavit, Hill states that he was in a non-work-related automobile accident and sustained neck injuries. (Hill Affidavit, Doc. 34-4, ¶ 11.) Because of these injuries, Hill was required to attend physical therapy sessions three times a week. Id. Hill states that he was "generally able to

clock-in by 9:00 – 9:30am" and he also notes that he "had a verbal arrangement with Griffin" about being late. Id. Hill claims that while he was eventually fired for these absences, another employee, Brian Shoup, "attended the same therapy sessions" for an injury and was not fired. (Doc. 1, p. 4.)

The Court finds that Brian Shoup, a mechanic at Thomasville Ford, is not a valid comparator for purposes of comparing treatment. Shoup, as a mechanic, had different job responsibilities than those of Hill. (DSMF ¶ 28.)   While a different job description is not necessarily indicative of an improper comparison, Hill has failed to show how the two men are similar "in all relevant aspects" as far as the expectations about their time at work. While Hill was responsible for being at work from 8:00 a.m. until 5:30 p.m. (Griffin 94), there is no evidence on the record about what time Shoup was responsible for being at work. Shoup may have had different hours than Hill or had a different agreement with management. Without any evidence showing that they were in the same position and were treated differently, this Court cannot find Shoup a valid comparator for purposes of establishing disparate treatment. Thus, Hill cannot establish a prima facie case for either of the adverse actions that he suffered because he cannot show that he was replaced by a non-minority or underwent disparate treatment.

Based on the analysis above, the Court finds that Walker and Hill were not able to establish a prima facie case for discrimination for general comments spoken by Griffin, for unfavorable job assignments, for being sent home early, or

for being terminated. Thus, summary judgment is granted as to these claims brought by Walker and Hill.

Walker can, however, establish a prima facie case for being singled out to pay the entire $200.00 repair fee on the car damaged during his altercation with Anderson. Because Walker has established a prima facie case for this claim, the claim moves on to the next step of the three-step analysis as to this specific claim.

2. **Legitimate Reasons for Employment Action**

Once the plaintiff has established a prima facie case, an inference is raised that he was the subject of intentional race discrimination and the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions. Brown v. Ala. Dep't of Transp., 597 F.3d 1160, 1174 (11th Cir. 2010). This intermediate burden is "exceedingly light." Holifield, 115 F.3d at 1564 (citing Turnes v. AmSouth Bank, N.A., 36 F.3d 1057, 1061 (11th Cir. 1994)).

In this case, Thomasville Ford has not been able to articulate a reason that Walker was treated differently than Anderson in regards to the repayment of the $200.00 repair fee for the car that was damaged in their altercation. Thomasville Ford has denied that Walker was forced to pay the entire $200.00 fee, but has not produced any evidence to prove its assertion.[6] Based on the fact that

---

[6] Thomasville Ford argues in its reply brief that Walker only had to pay $100.00, claiming that it "produced pay records showing that only $100.00 total was deducted from Walker's pay and the other $100.00 was deducted from the pay of Anderson." (Doc. 37, p. 9.) However, the document to which Thomasville Ford

Thomasville Ford has not produced sufficient evidence to rebut Walker's assertion that the entire $200.00 repair bill was taken out of his account, the Court finds that Thomasville Ford cannot carry its burden at step two. Thus, summary judgment is denied as to Walker's claim that he suffered discrimination when he was forced to pay the entirety of the repair bill and Anderson, a white employee, did not pay anything.

3. **Evidence of Pretext**

Thomasville Ford did not meet its burden at step two of the analysis, and thus, it is unnecessary to reach step three.

B.     **Title VII Claim based on Retaliation**

Title VII prohibits employers from retaliating against an employee "because he has opposed any … unlawful employment practice … or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." Gowski v. Peake, 682 F.3d 1299, 1311 (11th Cir. 2012) (citing 42 U.S.C. § 2000e-3(a)). To prove a claim of retaliation under Title VII, a plaintiff must demonstrate that (1) he engaged in statutorily protected activities, (2) an adverse employment action occurred, and (3) the adverse action was causally related to the plaintiff's

---

cites in support is the repair bill on which Griffin had written a note indicating his desire for $100.00 to be taken from each paycheck. (Doc. 34-8.) Contrary to Thomasville Ford's statement, this piece of evidence does not show from which accounts the money was actually taken – it shows only Griffin's intent to take the money out of both men's accounts. However, it is conceivable that Griffin later changed his mind and took the money entirely out of Walker's account.

protected activities. <u>Gregory v. Georgia Dept. of Human Resources</u>, 355 F.3d 1277, 1279 (11th Cir. 2004) (citing <u>Little v. United Technologies, Carried Transicold Div.</u>, 103 F.3d 956, 959 (11th Cir. 1997)).

Under 42 U.S.C. § 2000e-3(a), there are two types of statutorily protected activities that may form the basis of a retaliation claim. The first stems from the "participation clause," which protects an employee who "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). The second type of activity is found in the "opposition clause," which protects an employee who "has opposed any practice made an unlawful employment practice by this subchapter." 42 U.S.C. § 2000e-3(a). The distinction between the two types of activities is that acts protected by the participation clause generally occur in conjunction with or after the filing of a formal charge with the EEOC. <u>Vinson v. Dept. of Corrections, Florida</u>, 672 F. Supp. 2d 1247, 1254 (N.D. Fla. 2009). On the other hand, activities protected by the opposition clause generally occur prior to the filing of a formal charge with the EEOC. <u>Id.</u> An employee who seeks protection under the opposition clause must show that he "had a good faith, reasonable belief that the employer was engaged in unlawful employment practices." <u>Weeks v. Harden Mfg. Corp.</u>, 291 F.3d 1307, 1311-12 (11th Cir. 2002) (quotation omitted). It is "not enough for a plaintiff to allege that his belief in this regard was honest and bona fide; the allegations and record must also indicate

that the belief, though perhaps mistaken, was objectively reasonable." Id. at 1312 (quotation omitted).

In this case, Walker claims that he engaged in a statutorily protected activity in several ways. (Doc. 36, p. 12.) First, he claims that he made a statement about Griffin's discriminatory practices in the presence of Chuck Hartsfield, the shop foreman, who then repeated his statement to Griffin. (Walker 52-53.) Specifically, Walker claims that he said to himself "What it is he got against colored people?", and Hartsfield overheard this statement and repeated it to Griffin. Id. Griffin called Walker into his office shortly after he made this statement. (Walker 54.) Walker claims that Griffin asked him what he said to Hartsfield, and Walker responded "I wasn't talking to [Hartsfield]. I was talking within myself." (Walker 54-55.) That was the extent of the conversation. This conversation took place a couple of months before Walker's termination (Walker 55), but Walker claims that the conversation had a direct impact on Griffin's decision to terminate him.

Second, Walker claims that he engaged in a statutorily protected activity when he told Kay Wood, the office comptroller, about Griffin's discriminatory behavior. (Walker Affidavit, ¶ 7.) Walker alleges that Wood told him to "keep his head down and be careful, but took no action to remedy the situation." Id. Third, Walker makes the general claim that he "was fired after he complained about Griffin's treatment of him and Hill." (Doc. 36, p. 12.)

There is an arguable claim that these are activities protected under the opposition clause of Title VII. Walker's first claim is somewhat tenuous since he admitted in his deposition that he was not speaking his complaint about Griffin to anyone but was instead talking to himself. (Walker 55.) However, viewing the evidence in the light most favorable to the plaintiff, the Court finds that these three actions are all protected under Title VII.

After a plaintiff demonstrates that he was engaged in statutorily protected activities, the next step in establishing a prima facie case for retaliation under Title VII requires the plaintiff to show that he suffered an adverse employment action. In this case, Walker claims that he was fired, and the Court finds that this does constitute an adverse action.

Finally, the third step of the prima facie case requires a plaintiff to demonstrate a causal connection between the statutorily protected activity and the adverse action. The causation element has been interpreted broadly by the Eleventh Circuit. Coutu, 47 F.3d at 1074. To satisfy this element, a plaintiff must show that "(1) the decisionmakers were aware of his protected conduct and (2) his protected activity and the adverse employment action were not wholly unrelated." Henderson v. FedEx Express, 442 Fed. Appx. 502, 506 (11th Cir. 2011) (citing Gupta v. Fla. Bd. of Regents, 212 F.3d 571, 590 (11th Cir. 2000) (abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 126 S. Ct. 2405 (2006)).

In this case, Walker cannot show that the protected activity and the adverse employment action were related. Walker's conversation with Griffin after Hartsfield allegedly reported the statement he made under his breath occurred at least several months before he was terminated, and perhaps longer. (Walker 55.) This timeline does not establish that Walker's statement was related to his termination, and Walker presents no additional evidence which would tie his statement to his termination. Thus, there is no causal connection between the two events. Likewise, Walker is unable to establish a causal connection between his conversation with Kay Wood and his termination. Walker does not mention a date on which his conversation with Wood occurred, and the Court cannot make assumptions about the proximity of events. Thus, there is no evidence from which to make a causal connection between Walker's conversation with Wood and his termination. The same goes for Walker's claim that he complained about Griffin's treatment to other employees. This general allegation is not sufficient to establish a prima facie case for retaliation. Based on the evidence, the Court finds that Walker's claim for retaliation fails as a matter of law.

As to Hill, based on a complete review of the record, the Court cannot find where Hill engaged in any statutorily protected activities that would give rise to a retaliation claim. There is no evidence that he ever spoke out against employment practices at Thomasville Ford or took any other action in regards to what he may have believed were discriminatory policies at Thomasville Ford. Thus, he cannot establish the prima facie case for retaliation. For the reasons

stated above, neither Walker nor Hill can establish a prima facie case for retaliation and summary judgment is granted on these claims.

IV.   **CONCLUSION**

In sum, the Court finds that Walker and Hill were unable to establish a prima facie case on the following discrimination claims:

- General comments or actions made by Griffin in the workplace

- Unfavorable job assignments

- Being sent home early

- Being terminated

Summary judgment is granted in favor of Thomasville Ford as to the above-listed claims. However, summary judgment is denied on Walker's claim that he was forced to pay the entire $200.00 repair bill after his altercation with Anderson. This issue boils down to witness credibility, which is an issue properly left to a jury. With this issue remaining, the case shall be set for trial in the January term.

As to Plaintiffs' retaliation claims, the Court grants summary judgment on Walker and Hill's claims in favor of Thomasville Ford. Walker was unable to establish a prima facie case for retaliation and Hill did not produce sufficient evidence to show any statutorily protected activities.

**SO ORDERED,** this 2nd day of November, 2012.

*/s/ Hugh Lawson*
HUGH LAWSON, SENIOR JUDGE

ebr

31